IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RUSSELL M. GRIMES,             )
                                    )
             Petitioner,       )
                                    )
        v.                  )    C.A. No. 21-69 (MN)
                                    )
ROBERT MAY, Warden, and     )
ATTORNEY GENERAL OF THE STATE  )
OF DELAWARE,           )
                                    )
             Defendant.     )

## MEMORANDUM OPINION

Russell M. Grimes – *Pro se* Petitioner.

Matthew C. Bloom, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

March 28, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Petitioner Russell M. Grimes ("Petitioner") has filed a Petition and an Amended Petition

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 1; D.I. 7).  The State

filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 10; D.I. 13).  Petitioner also

filed a Motion for Summary Judgment.  (D.I. 19).  For the reasons discussed, the Court will deny

the Petition and will deny the Motion for Summary Judgment as moot.

I.    **BACKGROUND**

On August 26, 2011, a masked man entered the First National Bank of Wyoming in Felton, Delaware (the "Bank"), displayed what appeared to be firearm, ordered the Bank manager to exit her office, and told the tellers to empty the cash drawers. During the robbery, the man jumped over a counter in the Bank and blood was later discovered on the ceiling above that counter. The man placed the money from the cash drawers into a satchel and exited the Bank. These events were recorded on the Bank's security cameras. The money taken from the Bank contained dye packs, a security device designed to stain money taken from the Bank, and "bait bills," bills for which the bank had recorded and maintained serial numbers in case of theft. Over $54,000 was taken from the Bank.

When the suspect exited the Bank, he entered a black SUV. An employee of the Bank who ran outside during the robbery testified that she saw the SUV driving away from the Bank and that the SUV was emitting "pink, red smoke" which indicated to her that the dye pack had gone off. Officer Keith Shyers of the Harrington Police Department ("Officer Shyers") also observed the SUV, and testified that he saw a black male "hanging out [of] the window" of the SUV and a "red poof" that "looked like some kind of paint."

Because the vehicle was traveling at a high rate of speed and he thought something was suspicious, Officer Shyers turned around and began following the SUV. Officer Shyers then heard a call that went out over the radio dispatch for a robbery that had just occurred at the Bank. Officer Shyers was the first officer to begin pursuing the car and was the lead vehicle for much of the pursuit. A few minutes into the pursuit, the SUV stopped at an intersection and the passenger got out of the vehicle and began firing shots at the pursuing officers. Officer Shyers testified that he was approximately

1

20 to 30 feet from the passenger and that the passenger was a black male wearing a grey hooded sweatshirt.

The passenger then got back in the SUV and a high-speed pursuit ensued involving officers from the Delaware State Police, Harrington Police Department, and Felton Police Department. At various points during the pursuit, the passenger popped up through the sunroof and fired shots at the officers. The left rear tire of Officer Shyer's vehicle was shot and he abandoned his vehicle and jumped into another officer's car to continue the pursuit.

Corporal Scott Torgerson, an assistant shift supervisor for the Delaware State Police ("Corporal Torgerson"), who was driving a fully-marked Crown Victoria, took over as the lead vehicle in the pursuit. The passenger continued to fire shots at the officers from the sunroof. The SUV drove around spike strips that had been set in its path and Corporal Torgerson continued to pursue it. Shortly thereafter, the driver lost control of the SUV and it came to rest in a ditch with its back tires stuck. The driver and the passenger both exited the SUV and began fleeing and Corporal Torgerson fired shots at them. The driver of the SUV was shot in the leg by Corporal Torgerson and was later identified as [Russell] Grimes. The passenger of the vehicle escaped on foot.

*State v. Grimes*, 2019 WL 3337897, at *2 (Del. Super. Ct. July 23, 2019) (cleaned up).  The police later identified Petitioner's accomplice as William S. Sells III.  *See id*. at *1-3.

Following his arrest, Petitioner filed a pre-indictment motion to proceed *pro se*.  (D.I. 11-1 at Entry No. 3).  The Delaware Superior Court conducted a self-representation hearing and granted the motion.  (D.I. 11-1 at Entry No. 8; D.I. 11-30).

On November 7, 2011, Petitioner was indicted on one count each of first-degree robbery, first-degree conspiracy, second-degree conspiracy, possession of a firearm during the commission of a felony ("PFDCF"), possession of a firearm or ammunition for a firearm by a person prohibited ("PFBPP PABPP"); six counts of aggravated menacing; and five counts of attempted first-degree murder.  (D.I. 11-28).  Petitioner and Sells were tried together in May 2013.  *See Grimes v. State*, 113 A.3d 1080 (Table), 2015 WL 2231801, at *1 (Del. May 12, 2015).  During the trial, the State

moved to amend the indictment to change the robbery victim's name.  *See Grimes v. State*, 237 A.3d 68 (Table), 2020 WL 4200132, at *2 (Del. July 21, 2020).  The indictment originally named Rose Marie Hase, a bank teller, as the robbery victim and other employees – including Vicki Ebaugh, the bank manager – as victims of the six counts of aggravated menacing.  *See id*.; *Grimes*, 2019 WL 3337897, at *1.  At trial, Ebaugh testified that she assisted the armed robber with emptying the drawers and Hase testified that she was merely present.  *See Grimes*, 2020 WL 4200132, at *2.  The Superior Court allowed the amendment under Delaware Superior Court Criminal Rule 7(e).  (*See id*.; (D.I. 11-20 at 3-17)).  The jury found Petitioner guilty of first-degree robbery, second-degree conspiracy, PFDCF, PFBPP PABPP, and five counts of second-degree reckless endangering (as lesser included offenses of attempted first-degree murder).  *See Grimes,* 2020 WL 4200132, at *1.  The jury acquitted Petitioner of first-degree conspiracy and all six counts of aggravated menacing.  *See id*.  The Superior Court imposed an aggregate sentence of Level V incarceration for 64 years, followed by probation.  (D.I. 11-29).  Sells was also convicted and sentenced.  *See Sells v. State*, 109 A.3d 568, 570 (Del. 2015).

Petitioner and Sells appealed separately.  *See Grimes*, 2015 WL 2231801, at *1; *Sells*, 109 A.3d at 570.  In January 2015, the Delaware Supreme Court overturned Sells' convictions because the Superior Court erroneously denied him the right to exercise a peremptory strike under *Batson v. Kentucky*, 476 U.S. 79 (1986).  *See Sells*, 109 A.3d at 582.  The Delaware Supreme Court then ordered supplemental briefing in Petitioner's appeal because his use of peremptory challenges had been similarly restricted.  *See Grimes*, 2015 WL 2231801, at *1.  The Delaware Supreme Court vacated Petitioner's convictions and remanded the case for a new trial.  *See id*.

On remand, Sells resolved his charges by entering a negotiated guilty plea.  *See State v. Sells*, 2017 WL 8788856, at *1 (Del. Super. Ct. Oct. 11, 2017).  Petitioner was retried in November

3

2016.  (D.I. 11-1 at Entry No. 247).  The State re-used the amended indictment from Petitioner's first trial.  *See Grimes*, 2019 WL 3337897, at *1; (D.I. 11-9 at 53).  Petitioner did not object to using the amended indictment from his first trial.  *See Grimes*, 2020 WL 4200132, at *2.  The jury convicted Petitioner of first-degree robbery, second-degree robbery, PFDCF, PFBPP PABPP, and five counts of second-degree reckless endangering.  *See Grimes v. State*, 258 A.3d 147 (Table), 2021 WL 3441348, at *1 (Del. Aug. 5, 2021).  The Superior Court imposed an aggregate sentence of 53 years at Level V, followed by probation.  *See id*.  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on June 12, 2018.  *See Grimes v. State*, 188 A.3d 824 (Del. 2018).

On August 3, 2018, Petitioner field a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 11-1 at Entry No. 274; D.I. 13-1 at 38-59).  On July 23, 2019, a Superior Court Commissioner issued a Report and Recommendation that Petitioner's Rule 61 motion be denied as procedurally barred.  (D.I. 12-15 at 51-73); s*ee Grimes,* 2019 WL 3337897, at *6.  On October 16, 2019, the Superior Court adopted the Commissioner's Report and Recommendation and denied Petitioner's Rule 61 motion.  (D.I. 1-1 at 21-23); *see Grimes,* 2019 WL 3337897, at *4.  The Delaware Supreme Court affirmed that decision on July 21, 2020.  *See Grimes*, 2020 WL 4200132, at *4.

In October 2023, Petitioner filed a motion for correction of illegal sentence, which the Superior Court denied.  *See Grimes v. State*, 2024 WL 1069967, at *2 (Del. Mar. 11, 2024).  Petitioner filed another motion for correction of illegal sentence in November 2023, which the Superior Court denied after construing it to be a motion for reargument from its denial of Petitioner's October 2023 motion for correction of illegal sentence.  *See id*.  Petitioner appealed

that decision.  On March 11, 2024, the Delaware Supreme Court affirmed the Superior Court's November 2023 decision.  *See id*.

## II.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes.  *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial

created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim based on its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1);

8

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Conversely, if the state's highest court did not adjudicate the merits of a properly presented claim, the claim is reviewed *de novo* instead of under § 2254(d)'s deferential standard. *See Breakiron v. Horn,* 642 F.3d 126, 131 (3d Cir. 2011); *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). *De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (Justice O'Connor concurring). "Regardless of whether a state court reaches the merits of a claim, a federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Lewis*, 581 F.3d at 100 (cleaned up).

## III.   <u>DISCUSSION</u>

Petitioner's timely filed Petition asserts the following three grounds for relief: (1) the amendment of his indictment and his retrial on the charge of first-degree robbery violated his right to be protected against double jeopardy (D.I. 7 at 4-5); (2) he was denied his due process right to a fair trial because: (a) the indictment was not presented to the grand jury in its amended form, which means he was convicted and sentenced for a charge unsupported by probable cause; and (b) his conviction of a greater offense and acquittal of a lesser offense violated the requirement that his guilt must be found beyond a reasonable doubt (D.I. 7 at 6-7); and (3) the amendment of the indictment divested the Delaware Superior Court of subject matter jurisdiction, thereby depriving Petitioner of his due process right to notice of all charges made against him (D.I. 7 at 8).

A.    **Claim One: Double Jeopardy**

In Claim One, Petitioner asserts that amending the indictment to align the victim of the first-degree robbery offense (Vicki Ebaugh) with the victim of the aggravated menacing offense (Vicki Ebaugh), and his retrial on the first-degree robbery charge after his acquittal on the aggravated menacing charge, violated his right to be protected against Double Jeopardy for four reasons: (a) the retrial constituted a successive prosecution after acquittal (D.I. 7 at 15); (b) the amendment of the indictment subjected him to multiple prosecutions for the same offense after jeopardy had attached (D.I. 7 at 5, 15); (c) the State violated the doctrine of issue preclusion[2] by retrying him for first-degree robbery after his acquittal on the aggravated menacing charge (D.I. 7 at 16; D.I. 13 at 7); and (d) the amendment of the indictment was multiplicitous and placed Petitioner at risk of receiving multiple sentences for the same offense in violation of the Double Jeopardy Clause (D.I. 7 at 5, 14). *See generally* (D.I. 13 at 7).

The record reveals that Petitioner exhausted state remedies for Claim One by presenting variations of the sub-arguments on direct appeal and post-conviction appeal. On direct appeal, Petitioner argued that the Double Jeopardy Clause barred his retrial on the charge of robbing Vicki Ebaugh when he was already acquitted of the lesser offense-included offense of menacing her. (D.I. 11-8 at 11). Citing the Fifth Amendment, Petitioner contended that, "[t]his is a classic case of Double Jeopardy jurisprudence in which there has been a second prosecution for the offense

---

[2]      In his Petition, Petitioner uses the term "collateral estoppel" rather than "issue preclusion." The Supreme Court cases cited in this Opinion interchangeably use the terms "collateral estoppel" and "issue preclusion." Nevertheless, in *Yeager v. United States*, the Supreme Court indicated a preference for using the term "issue preclusion" in the instant context. *See Yeager v. United States*, 557 U.S. 110, 119 at n.4 (2009) ("Currently, the more descriptive term "issue preclusion" is often used in lieu of "collateral estoppel."). Given this, when quoting the Supreme Court decisions, the Court uses the term used by the Supreme Court in the particular decision but, when conducting its own analysis and discussion of Petitioner's arguments, the Court uses the term "issue preclusion".

after an acquittal." (D.I. 11-8 at 9).  Petitioner also argued that the State was collaterally estopped from prosecuting him for first degree robbery after he was acquitted of aggravated menacing. (D.I. 11-12 at 5).

The Delaware Supreme Court rejected both of Petitioner's arguments on direct appeal.  The Delaware Supreme Court denied Petitioner's "classic" double jeopardy argument after determining that Petitioner's situation involved "a single – as distinguished from a successive – prosecution." *Grimes*, 188 A.3d at 827.  The Delaware Supreme Court explained that Petitioner "was indicted for first-degree robbery and aggravated menacing at the same time, and his retrial for first-degree robbery was still – under the *Ball* [*v. United States*, 163 U.S. 662, 672 (1896)] rule – part of the same, continuous prosecution." *Id.* at 828.  The Delaware Supreme Court also rejected Petitioner's collateral estoppel argument, holding that Petitioner's acquittal on the aggravated menacing charge did not have an issue-preclusive effect on the State's ability to retry him for first-degree robbery. *See id.* at 828-29.

On post-conviction appeal, Petitioner argued that the amendment to the indictment "changed the complexion of the indictment" and placed him "in jeopardy twice" because he "now was charged twice for the same offense under separate statutes." (D.I. 11-19 at 19).  He asserted that the amendment "unconstitutionally created a dynamic wherein [his] acquittal for aggravating menacing of . . . Ebaugh carried no preclusive effect." (D.I. 11-19 at 20).  The Delaware Supreme Court denied the argument as procedurally barred under Rule 61(i)(4) for being formerly adjudicated on direct appeal. *See Grimes*, 2020 WL 4200132, at *2.

This record demonstrates that the Delaware Supreme Court adjudicated the merits of all four sub-arguments in Claim One. *See, e.g., Jackson v. Metzger*, 2020 WL 2839214, at *5 (D. Del. June 1, 2020) (stating that, although Rule 61(i)(4) effectuates a procedural default under

Delaware law, the application of Rule 61(i)(4) "does not result in procedural default for federal habeas purposes.  Rather, the fact that the claim was formerly adjudicated means that it was decided on the merits.").  Thus, Petitioner will only be entitled to relief if the Delaware Supreme Court's decision to deny Claim One was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1).

### 1.   <u>Successive Prosecution and Multiple Prosecutions for Same Offense</u>

The Double Jeopardy Clause protects a defendant against: (i) a second prosecution for the same offense after acquittal; (ii) a second prosecution for the same offense after conviction; and (iii) multiple punishments for the same offense.  *See North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).

Of particular relevance to Claim One is the fact that the Double Jeopardy Clause prohibits the successive prosecution of a defendant for a greater or lesser included offense when he has already been tried and acquitted on the other.  *See Brown v. Ohio*, 432 U.S. 161, 169 (1977); *Lockhart v Nelson*, 488 U.S. 33, 39 (1988) (explaining that the Double Jeopardy Clause "affords the defendant who obtains a judgment of acquittal [. . .] absolute immunity from further prosecution for the same offense."); *United States v. Scott*, 437 U.S. 82, 91 (1978) (the "law attaches particular significance to an acquittal."); *Arizona v. Washington*, 434 U.S. 497, 503 (1978) ("The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though the acquittal was based upon an egregiously erroneous foundation.").  The Double Jeopardy Clause, however, does not prohibit the State from joining greater and lesser-included offenses within a single indictment and prosecuting them both in the same trial.[3] *See Ohio v. Johnson*, 467 U.S. 493, 500 (1977).  Additionally, pursuant to the concept

---

[3]    Nevertheless, "in the event of a guilty verdict on the more serious offenses," the trial court presumably will "have to confront the question of cumulative punishments as a matter of

of "continuing jeopardy" formulated in *Ball*, 163 U.S. at 672, the Double Jeopardy Clause does not bar retrial for the same offense when a defendant successfully appeals and obtains a reversal of his conviction.  *See Price v. Georgia*, 398 U.S. 323, 326 (1970) (explaining that the *Ball* Court "effectively formulated a concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course.").  Although an acquittal terminates initial jeopardy, a conviction still subject to direct appeal is not final.  *See Justices of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 308 (1984).  Situations where a retrial is viewed as a continuation of the initial prosecution include: (1) retrial after a mistrial was granted on the defendant's motion (unless the government intended to provoke the mistrial request), *Oregon v. Kennedy*, 456 U.S. 667, 678-79 (1982); (2) retrial after a mistrial was justified by "manifest necessity," such as trial error that cannot be corrected or the jury's inability to reach a verdict, *Illinois v. Somerville*, 410 U.S 458, 464 (1973); and (3) retrial after the defendant's conviction was reversed because of trial error, *Ball*, 163 U.S. at 671-72, because his guilty pleas was involuntary, *United States v. Tateo*, 377 U.S. 463, 464 (1964), or because the conviction was against the weight of the evidence, *Tibbs v. Florida*, 457 U.S. 31, 47 (1982).[4]  As the United States Supreme Court explained in *Bravo-Fernandez v. United States*, 580 U.S. 5 (2016):

> This "continuing jeopardy" rule neither gives effect to the vacated judgment nor offends double jeopardy principles. Rather, it reflects

---

state law."  *Johnson*, 467 U.S. at 500 ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").

[4]   The narrow exception to the *Ball* "continuing jeopardy" rule is when the reviewing court has found the evidence legally insufficient.  *See Burks v. United States*, 437 U.S. 1, 18 (1978).  The *Burks* exception is premised on the idea that reversal based on insufficiency of the evidence, rather than legal error, has the same effect as a judgment of acquittal.  *See Tibbs*, 457 U.S. at 40.

> the reality that the criminal proceedings against an accused have not
> run their full course.

*Id*. at 18–19.

In Claim One (a) and (b), Petitioner asserts that the amendment of his original indictment "plac[ed him] in jeopardy twice for the same offense" because it "aligned" a lesser offense of aggravated menacing and a greater offense of first-degree robbery.[5] (D.I. 7 at 4-5). He also argues that "the adjudication of the second direct appeal was in fact and in law, a second form of Double Jeopardy," namely, "a successive prosecution for 1st degree robbery following an acquittal for aggravated menacing." (D.I. 7 at 17-18).

To the extent Petitioner generally asserts that amending an indictment to include both greater and lesser included offenses *per se* violates the Double Jeopardy Clause, the argument is unavailing. The Double Jeopardy Clause does not prohibit a state from charging a defendant with greater and lesser included offenses in one indictment and prosecuting those offenses in a single trial.[6] *See Johnson*, 467 U.S. at 500.

To the extent Petitioner argues that his acquittal for the aggravated menacing of Ebaugh barred his retrial on the greater offense of robbing her, because the aggravated menacing and first-

---

[5]     Petitioner states:

> After the trial court allowed the amendment to place petitioner in a double jeopardy calculus, meaning, after the amendment, instead of Robbery 1st of Rose Marie Hase and aggravated menacing of Vicky Ebaugh which was the sufficient way the grand jury presented its true bill. After the change Petitioner Grimes faced the unconstitutional dynamic of fighting a robbery 1st of Vicky Ebaugh and aggravated menacing of Vicky Ebaugh.

(D.I. 7 at 5, 16)

[6]     The Court addresses Petitioner's argument that the amendment created a multiplicitous indictment later in the Opinion. *See infra* at Section III.A.3. The Court also addresses Petitioner's related argument that the Superior Court improperly permitted the amendment of the indictment later in the Opinion. *See infra* at Section III.B.

degree robbery charges "are the same offense for double jeopardy purposes, per Delaware law," the argument is similarly unavailing.  (D.I. 7 at 15).  When addressing this argument in Petitioner's direct appeal, the Delaware Supreme Court acknowledged that the prohibition against double jeopardy bars a second *successive* prosecution for a greater offense after the defendant has been acquitted on a lesser-included offense.  *See Grimes*, 188 A.3d at 827.  Nevertheless, citing the relevant Supreme Court decisions, the Delaware Supreme Court concluded that double jeopardy considerations did not bar Petitioner's retrial on the first-degree robbery charge here because: (1) the State was authorized to charge first-degree robbery and aggravated menacing together in the amended indictment, *see Johnson*, 467 U.S. at 500-01; (2) Petitioner was subject to continuing jeopardy from his first trial through his second trial because first-degree robbery and aggravated menacing were both charged in the amended indictment, and the reversal of his first-degree robbery conviction was not "final" for double jeopardy purposes, *see Lydon*, 466 U.S. at 308, 326; *Ball*, 163 U.S. at 672; *Brown*, 432 U.S. at 168; and (3) Petitioner's retrial after his convictions were overturned on direct appeal due to an error during jury selection did not constitute a successive prosecution, *see Price*, 398 U.S. at 329.  *See Grimes*, 188 A.3d at 826-828.   The Delaware Supreme Court correctly concluded:

> [W]hile [Petitioner] believes that acquittals should have the same double-jeopardy effect on retrials that they have on successive prosecutions, *Johnson* and *Price* show that "there is a difference between separate, successive trials of greater and lesser offenses, and the different situation[s] in which both are tried together."  For double-jeopardy purposes, "it makes all the difference."

*Grimes*, 188 A.3d at 828 (cleaned up).

Based on the foregoing, the Court concludes that the Delaware Supreme Court's denial of Claim One (a) and (b) was neither contrary to, nor based on unreasonable application of, clearly established federal law.

15

### 2.      Issue Preclusion

The Double Jeopardy Clause also incorporates the doctrine of issue preclusion and protects defendants from being forced to relitigate issues of ultimate fact that jury decided at a previous trial.  *See Bravo-Fernandez,* 580 U.S. at 12; *Ashe v. Swenson,* 397 U.S. 436, 443–46 (1970). "[P]rinciples of collateral estoppel [. . .] are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict." *United States v. Powell*, 469 U.S. 57, 68 (1984).  A defendant who raises issue preclusion under the Double Jeopardy Clause bears the heavy burden of showing that "the issue whose relitigation he seeks to foreclose was actually decided by a prior jury's verdict of acquittal." *Bravo-Fernandez*, 580 U.S. at 12.  When the same jury reaches irreconcilably inconsistent verdicts on the question that the defendant seeks to prevent a second jury from considering, and the conviction is later vacated for legal error unrelated to the inconsistency, the "principles of collateral estoppel [. . .] are no longer useful." *Powell*, 469 U.S. at 68; *see Bravo-Fernandez*, 580 U.S. at 17–18.  In such cases, retrial is permitted because it cannot be determined why the jury returned an acquittal and, relatedly, the defendant cannot meet the burden of demonstrating that the jury necessarily decided the point at issue in his favor.  *See Bravo-Fernandez*,  580 U.S. at 18-24; *Powell*, 469 U.S. at 68-69.

On direct appeal, Petitioner argued that the "principles of double jeopardy are subsumed by the broader doctrine of collateral estoppel which means that, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit."  (D.I. 11-12 at 5).  In Claim One (c) of his Petition, Petitioner contends that his aggravated-menacing acquittal had an issue-preclusive effect on the State's ability to retry him for first-degree robbery.  According to Petitioner: (1) under Delaware law, the two offenses of aggravated menacing and first-degree robbery merged into the same offense because the offenses happened during the same occurrence (*Id*. at 7); (2) the fact that his

convictions from his first trial were vacated "meant that all of the convictions were wiped out," leaving his acquittal in place (D.I. 11-14 at 6-7); and (3) by retrying him for first-degree robbery, the State was re-prosecuting him "for a charge whose exact same elements ha[d] previously been adjudicated in an acquittal." (D.I. 11-14 at 7). In sum, Petitioner appears to argue that the Double Jeopardy Clause barred the second prosecution for first-degree robbery because he believes that his acquittal on the lesser-included offense of aggravated menacing constitutes an acquittal on the greater offense. (D.I. 11-2 at 5).

The Delaware Supreme Court was not persuaded by Petitioner's argument that his acquittal should be "credited" over the conviction and treated as the "jury's true verdict." *Grimes*, 188 A.3d at 829. After explaining that "issue preclusion is predicated on the assumption that the jury acted rationally," the Delaware Supreme Court held that the principle of issue preclusion did not apply in Petitioner's case because the jury's irreconcilable verdict made it "impossible to discern which verdict the jurors arrived at rationally." *Grimes*, 188 A.3d at 829. This conclusion was premised on a straight-forward application of the rationale set forth in *Powell* and *Bravo-Fernandez*. Therefore, the Court concludes that the Delaware Supreme Court's denial of Claim One (c) was not contrary to, and also did not involve, an unreasonable application of clearly established federal law.

### 3.   Multiplicity

Multiplicity is the charging of a single offense in separate counts of an indictment. *See United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978). "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment." *United States v. Kennedy*, 682 F.3d 244, 255 (3d Cir. 2012). Notably, multiplicitous charges alone do not violate a defendant's right to be protected against double jeopardy; it is the resulting multiple convictions

17

or punishments that potentially violate the Double Jeopardy Clause.  *See Johnson*, 467 U.S. at 500 ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").   The traditional test for determining if the cumulative punishment imposed for multiple offenses violates double jeopardy is the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).  *See Brown*, 432 U.S. at 166 (noting that the "established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger*.").  Pursuant to *Blockburger*, a court must analyze "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."  *United States v. Dixon*, 509 U.S. 688, 696 (1993).  The rule articulated in *Blockburger* is a "rule of statutory construction to help determine legislative intent;" the rule is "not controlling when the legislative intent is clear from the face of the statute or the legislative history."  *Garrett v. United States*, 471 U.S. 773, 778-79 (1985).  In the typical multiplicity case, two different statutes define the "same offense" because one is a lesser-included offense of the other.  *See Rutledge v. United States*, 517 U.S. 292, 297 & n.6 (1996).

In Claim One (d), Petitioner contends that the State created a multiplicitous indictment when it changed the name of the victim for the first-degree robbery charge to "align" with the name of the victim for one of the aggravated menacing charges.  On post-conviction appeal, the Delaware Supreme Court denied this argument as formerly adjudicated under Rule 61(i)(4), asserting that it had already ruled on the underlying double jeopardy argument when it affirmed Petitioner's conviction for first-degree robbery in his second direct appeal.  Given the Delaware

Supreme Court's reliance on Rule 61(i)(4), the Court must treat Claim One (d) as though it was adjudicated on the merits.

The Court does not need to engage in the *Blockburger* analysis to determine if the amended indictment was multiplicitous because, pursuant to well-settled Delaware law, aggravated menacing is a lesser-included offense of first-degree robbery. *See Poteat v. State,* 840 A.2d 599, 606 (Del. 2003) (concluding that "the General Assembly intended for Aggravated Menacing to be a lesser-included offense of Robbery in the First Degree."). Nevertheless, since Petitioner was not convicted of (nor sentenced for) two separate offenses involving the same conduct, any multiplicity issues surrounding the amended indictment did not result in violating Petitioner's right to be free from double jeopardy. During his original trial in 2013, Petitioner was convicted of only one count of first-degree robbery, and he was acquitted of all six counts of aggravated menacing. At his 2016 retrial, Petitioner was no longer facing any of the aggravated menacing charges because of the 2013 acquittals and, again, he was convicted of only one count of first-degree robbery. Given these circumstances, the Court concludes that Claim One (d) lacks merit and does not warrant relief under § 2254(d).

## B.    Claim Two (a): Not Cognizable and Procedurally Barred

In Claim Two (a), Petitioner argues that he "was convicted and sentenced for a charge in which there was no probable cause determination" because the indictment was not presented to the grand jury in its amended form. (D.I. 7 at 6). The Fifth Amendment right to a grand jury indictment does not apply to State criminal prosecutions,[4] therefore, "the legality of an amendment to an indictment is primarily a matter of state law." *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975). Claims based on errors of state law are not cognizable on federal

---

[4]    *See Apprendi v. New Jersey*, 530 U.S. 466, 499 (1994); *Rose v. Mitchell*, 443 U.S. 545, 557 n.7 (1979); *Hurtado v. California*, 110 U.S. 516 (1884).

habeas review, and federal courts cannot re-examine state court determinations on state law issues. *See Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001). Thus, as a threshold matter, the Court concludes that Claim Two (a) does not present an issue cognizable on federal habeas review.

Claim Two (a) is also procedurally barred. On post-conviction appeal, Petitioner argued that he was not provided notice of the amendment to the indictment which, in turn, misled him about the charges for which he needed to prepare a defense. (D.I. 11-19 at 14-19). The Delaware Supreme Court characterized Petitioner's argument as asserting that the amended indictment violated his right to a fair trial, and denied the argument as procedurally defaulted under Rule 61(i)(3) due to Petitioner's failure to present the argument during his first trial, first direct appeal, second trial, and second direct appeal. *See Grimes*, 2020 WL 4200132, at *1.

By applying the procedural bar of Rule 61(i)(3) to Claim Two (a), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule effectuating a procedural default. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998). Thus, the Court finds that Claim Two (a) is procedurally defaulted.

Having determined that Claim Two (a) is procedurally defaulted, the Court cannot review the Claim's merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed. Petitioner does not assert any reason for his default of Claim Two (a). Petitioner's failure to establish cause eliminates the Court's need to consider prejudice. Additionally, the miscarriage of justice

exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence.

Based on the foregoing, the Court will deny Claim Two (a) for failing to present an issue cognizable on federal habeas relief and, alternatively, as procedurally barred from habeas review.

### C.     Claim Two (b): Failure to Establish Proof of Guilt Beyond Reasonable for First-Degree Robbery

In Claim Two (b), Petitioner argues that his acquittal on the aggravating menacing charge necessarily prevents establishing the elements for first-degree robbery, thereby demonstrating that the State did not establish his guilt for first-degree robbery beyond a reasonable doubt.  (D.I. 7 at 6).  The record reveals that Petitioner presented this argument to the Delaware Supreme Court on post-conviction appeal in terms of double jeopardy/issue preclusion, due process, and inconsistent verdicts.  (D.I. 11-19 at 21).  The Delaware Supreme Court viewed the argument as essentially reasserting the double jeopardy claim that it had denied in Petitioner's second direct appeal, and dismissed the argument as barred under Rule 61(i)(4) for being formerly adjudicated. Consequently, to the extent Claim Two (b)'s "absence of proof beyond a reasonable doubt" argument asserts a double jeopardy violation, the Court denies it for the same reasons set forth in Section III.A. of this Opinion.

Nevertheless, in his Reply, Petitioner states that he presented Claim Two (b) to the Delaware Supreme Court as an insufficient evidence argument.  Given the Delaware Supreme Court's failure to consider it as such, Petitioner argues that the Court should review his insufficient evidence allegation on its merits. The Court is not persuaded.  A review of the record reveals that Petitioner did not "fairly present" his insufficient evidence argument to the Delaware Supreme Court.  The clearly established federal law governing insufficient evidence claims is the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See Eley* v. *Erickson*,

712 F.3d 837, 847 (3d Cir. 2013) ("The clearly established federal law governing Eley's [insufficient evidence] claim was determined in *Jackson*.").  Pursuant to *Jackson*, the relevant question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Although Petitioner cited to *Jackson* and used the phrase "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt" when he presented Claim Two (b) to the Delaware Supreme Court on post-conviction appeal, he actually argued that the inconsistency between the two verdicts (acquittal for aggravated menacing and conviction for first-degree robbery) meant all elements of first-degree robbery were not found beyond a reasonable doubt.  (D.I. 11-19 at 21).  Importantly, in *Powell*, the Supreme Court cautioned that sufficiency of the evidence review "should not be confused with the problems caused by inconsistent verdicts."  *Powell*, 469 U.S. at 67.  As the *Powell* Court explained:

> Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient.

*Id*.

Here, Petitioner did not argue on post-conviction appeal that the evidence was legally insufficient or that the trial court incorrectly instructed the jury on the burden of proof.  In other words, Petitioner did not fairly present a "true" insufficient evidence argument to the Delaware Supreme Court.  Given these circumstances, the Court concludes that Petitioner did not exhaust state remedies for the "true" insufficient evidence argument he asserts in Claim Two (b).

At this juncture, any attempt by Petitioner to raise Claim Two (b)'s insufficient evidence argument in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and denied as procedurally defaulted under Rule 61(i)(3). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014).  Thus, the Court must excuse as futile Petitioner's failure to exhaust state remedies, but still treat the insufficient evidence argument in Claim Two (b) as procedurally defaulted.

Petitioner has not provided any cause for his failure to fairly present the insufficient evidence argument to the Delaware Supreme Court on post-conviction appeal.[7]  In the absence of cause, the Court will not address the issue of prejudice.  Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence.  Accordingly, the Court will deny the insufficient evidence argument in Claim Two (b) as procedurally barred from habeas review.

### D.    Claim Three: Subject Matter Jurisdiction

In Claim Three, Petitioner contends that the amendment of the indictment divested the Superior Court of subject-matter jurisdiction over his case which, in turn, also violated due process. (D.I. 7 at 8).  As previously discussed with respect to Claim Two (a), the legality of an indictment is an issue of state law.  *See supra* at Section III.B.  The issue of the Superior Court's subject matter jurisdiction is also a matter of state law, because a Delaware state court's jurisdiction is determined by the Delaware Constitution and the Delaware Code.  *See* Del. Const. art. IV, 7; 10 Del. C. § 541; *United States v. Kerley*, 416 F.3d 176, 182 (2d Cir. 2005) ("[S]ubject matter jurisdiction . . . is

---

[7]     In his Reply, Petitioner attempts to present a vague argument that there was insufficient evidence to support his conviction by alleging that the trial transcripts have been altered. (D.I. 13 at 6).  Since Petitioner did not present this same allegation to the Delaware Supreme Court on post-conviction appeal, his current assertion does not cure his failure to satisfy the "fair presentation" requirement of the exhaustion doctrine.

wholly an issue of state statutory law.  The application – or misapplication of state subject matter jurisdiction rules raise no constitutional issues, due process or otherwise.").  Therefore, the Court will deny Claim Three for failing to assert an issue cognizable on federal habeas review.

Nevertheless, even if Claim Three could be construed as presenting an issue cognizable on federal habeas review, it is procedurally barred.  The record reveals that Petitioner exhausted state remedies for Claim Three by presenting it to the Delaware Supreme Court on post-conviction appeal, both as a free-standing claim and as a way to trigger Rule 61(i)(5)'s exception to the procedural default bar of Rule 61(i)(3).  *See Grimes,* 2020 WL 4200132, at *2; (D.I. 11-19 at 7). The Delaware Supreme Court denied Claim Three's lack-of-subject-matter-jurisdiction argument as procedurally defaulted under Rule 61(i)(3) because Petitioner did not raise the argument during his first trial, second trial and second appeal, and Petitioner did not demonstrate that his failure to raise the absence of subject matter argument triggered Rule 61 (i)(5)'s miscarriage of justice exception for the default.  *See Grimes*, 2020 WL 4200132, at *1.

Rule 61(i)(5) provides:

> The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

Given the language in Rule 61(i)(5), one could argue that the Delaware Supreme Court adjudicated the merits of Petitioner's lack-of-subject-matter-jurisdiction argument when determining that he did not trigger Rule 61(i)(5)'s exception to Rule 61(i)(3)'s bar.  To the extent the Court should view the Delaware Supreme Court's determination regarding Petitioner's failure to meet Rule 61(i)(5)'s exception as constituting an adjudication of Claim Three's merits, the Court finds that the Delaware Supreme Court's analysis in rejecting the argument actually supports the Court's threshold determination that Claim Three asserts an issue of state law that is not cognizable in this

proceeding. For instance, after explicitly identifying and then applying Delaware law, the Delaware Supreme Court determined that amending the indictment by changing the names of the victims did not constitute a substantive change, did not prejudice Petitioner, and did not divest the Superior Court of jurisdiction over his case. *See Grimes*, 2020 WL 4200132, at *3.

Conversely, to the extent the Delaware Supreme Court's consideration as to whether Petitioner's lack-of-subject-matter-jurisdiction argument could satisfy Rule 61(i)(5)'s exception to Rule 61(i)(3)'s bar did not constitute an adjudication of Claim Three on the merits for the purposes of § 2254(d)(1), the Court defers to the Delaware Supreme Court's final holding that Claim Three was procedurally defaulted under Rule 61(i)(3) and further concludes that Claim Three is procedurally barred.[8]

Based on the foregoing, the Court will deny Claim Three for failing to assert an issue cognizable on federal habeas review and, alternatively, as procedurally barred.

## IV. PENDING MOTION

During the pendency of this proceeding, Petitioner filed a Motion for Summary Judgment. (D.I. 19). The Motion re-asserts in summary form the arguments Petitioner presented in his Petition. Having already determined that none of the Claims in the Petition warrant relief, the Court will dismiss as moot the Motion for Summary Judgment.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A

---

[8] The Court concludes that Claim Three is procedurally barred because: (1) Petitioner does not assert any reason for his failure to present Claim Three during his first and second trials or during his appeals after his first and second trials; (2) in the absence of cause, the Court does not need to address the issue of prejudice; and (3) the miscarriage of justice exception to AEDPA's procedural default rule does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence.

certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability in this case.

## VI.    <u>CONCLUSION</u>

For the reasons discussed, the Court will deny the instant Petition and deny as moot the pending Motion for Summary Judgment. The Court also declines to issue a certificate of appealability. The Court will enter an Order consistent with this Memorandum Opinion.